case, Peskin v. Attorney General. Good morning, Your Honors, and may it please the Court, I'm Stephen Fogdell IV, the Petitioner, Shrinko Peskin. Your Honors, Pennsylvania's DUI statute does not divide—sorry, can I have three minutes for rebuttal? I just dove in. Yes, you may. Thank you so much, I appreciate it. Pennsylvania's DUI statute does not divide into literally hundreds of separate offenses based solely on drug identity, and the government's argument that it does is contrary to what this Court said in Hillox, it's contrary to Mullooly, it's contrary to the Pennsylvania State Court decisions in Ramsey and Swavely, and frankly, it's contrary to the suggested jury instructions and the language of the information on which the government places so much emphasis. What do we do with our own case law, where it appears that in dealing with Section 780.113 F1, pointing to the Controlled Substances Act, we have described the schedules themselves as setting forth the specific statutory alternatives, as being disjunctive and exhaustive as a list of stand-alone alternative definitions. Right, right, right. So if that's inherent in the schedules, and we have not just the possession with intent to distribute, but our DUI statute also pointing to 104, how do we reconcile that with our case law? Okay, so there's really two sets of cases that we're dealing with from this Court. You've got cases like Tucker and Abbott and Henderson, which is not cited in the briefs, but I cite it in the letter that I sent the other day. And now those are not removal cases, they're not dealing with removability under 1227A2B1. I want to get to that point, because that's one distinguishing factor. But you've got those cases, okay, and those cases are really not addressing Malooly and what Malooly says about how the categorical approach applies under 1227A2B1. So that's one thing that has to be kept in mind. What those cases are really saying, and I think if you read them in light of Swavely and Ramsey, what those cases are saying, and I think this is probably right, is that 780-1113A30, which is the possession with intent to distribute provision, okay, that is a pretty clear indication that that divides, okay, into the penalty provisions under 113F. And so, you know, there'll be F1 is sort of constituting one offense, F1.1 is another, F2 and F3 and so on. Now, Swavely, if you look at it in isolation from Ramsey, Swavely never supported the idea that these drug offenses literally divide all the way down to the individual drugs, okay. With Swavely, especially if you read it in connection with Ramsey, what Swavely is really saying is that F1 is an offense, F1.1 and so on. Maybe if you ignore Ramsey, you can say, okay, within a given offense like F1, which talks about Schedule 1 and Schedule 2 narcotics and they get a 15-year maximum, maybe you can say under Swavely, well, by schedule that's going to divide further, so you'll have a Now, that actually doesn't, that's not consistent with Ramsey because in Ramsey there was a Schedule 1 and a Schedule 2 narcotic and the crime, there were not two separate crimes. But the point, isn't the point that if you can distinguish them, and we're talking here again about a different statute than our DUI statute, but these cases like Swavely seem to be saying if you have two separate drugs, then it's two separate offenses. In other words, that the drug itself is the element. And I take your point that part of the reasoning is that there are different penalties that are associated with those different drugs falling into different schedules. But I want to just go back because the way we've talked about it in our own case law, it's not the possession with intent to distribute itself, it's the reference to 104 where we seem to be saying in cases like Henderson that the schedule itself sets out alternative elements. So I agree with you, I agree, Henderson does say that F1, which is Schedule 1 and Schedule 2 narcotics get the 15-year maximum. I agree with you that Henderson is saying that that statute literally divides all the way down to the individual drugs, okay? And so literally each one of them is going to be a separate offense. I agree with you that Henderson says that. Henderson predates Ramsey and that cannot be squared with Ramsey. In Ramsey you had a Schedule 1 and a Schedule 2 narcotic, so those should, under the logic of Henderson, those should divide and be separate offenses. And what Ramsey says is they merge, they're not distinct crimes. Henderson is, I want to say, 2016 and Ramsey is 2019 and I apologize because I think Your Honor was about to ask a question, I'm sorry. Yeah, I think this goes to the same thing that Judge Krause is asking about, maybe not. But you rely on Beatty in your opening brief pretty heavily to make a distinction between the cases that are cases of possession with intent to deliver and those sorts of things, where the schedules are looked to and you say they're separate offenses because they've got different penalties attached. And the DUI statute where the case law in Pennsylvania seems to be, well, there's a merger, these are, it doesn't really matter what the thing is that you're high on or that you're intoxicated by. Am I understanding your argument right in that regard that you're trying to make that distinction, hey, don't worry about Singh, don't worry about those other cases where you, the Third Circuit, have said things are divisible based on the specific drug because that's a different statute. This is the DUI statute. Am I understanding you right or not? So I think what we would say, Your Honor, is look at what this court said in Hillox, okay. In Hillox, Hillox said under Malooly, we've got to apply a categorical approach when we're talking about removability under 1227A2B Romanet I, you know, which is the related to a controlled substance under federal law, that basis for removability. Hillox says you've got to apply a categorical approach there. You don't divide by, you don't, you can, in Hillox, the court acknowledged Abbott and said, okay, under Abbott, to the extent the drug identity increases the penalty, you can consider that a separate element. Okay. But then the court, and if I could just, I apologize, Your Honor, I don't mean to pause, what, in the very next paragraph, what the court said is, signing Harvin v. Sessions out of the Second Circuit, but if the drug identity doesn't affect the penalty, it's not an element. Okay. And so, and so I think that's how we. To answer the question I'm trying to ask, which is, are you making an argument that because we're under the DUI statute, and not under some drug offense statute itself, that our cases like Singh are not a posit, that this is a different statute, and so even if there are different penalties attached to different drugs for purposes of possession with intent to distribute, for example, that's irrelevant here because it's a DUI statute we're operating under. That's the question I'm asking. Yes, yes, yes. And to follow up on that question, so you talk about Swavely, Ramsey, and others, which deal with 780-113-830. I want to hear your thoughts on a case that your friends on the other side cited, Given, which deals specifically with 380, with 3802, and whether or not that is the more applicable case when we're looking at Pennsylvania cases, and trying to determine whether or not something is an element or a means. Right. Well, so in that case, and Your Honor, I'm going to answer that question. I just wanted to make sure that I fully answered Judge Jordan's question just very quickly, which is, yes, we agree with that. The reason being that because under the DUI statute, difference in drug identity doesn't have any impact on the penalty at all. All the sections under 3802D, which deals with controls, they get the same offense. They get the same penalty. To be clear, and please, I want you to answer Judge Montgomery's question, but just on that particular point, you're not saying that it's a requirement to, that it's sufficient as soon as there is some effect on penalty, that that is the sign of having it be an element? If there's an effect on penalty, that's a sufficient condition for saying it's an element. Is it a necessary condition? No. But it is a sufficient condition. So what I would say, although what I think this court said, and I apologize because I am very sorry. So what this court said in Hillock's is, I want to, because I think I misspoke in response to your question. You look at Hillock's. Hillock's says, to the extent it affects the penalty, it's an element. But to the extent it does not affect the penalty, it's not an element. That's what this court said in Hillock's. So I think I would say it is a necessary condition. I misspoke in response to your question. So what, Your Honor, in the case you mentioned, if I recall correctly, what happened is the individual had a substance in their blood under D1-Romonat-1 and also had a metabolite of the same substance under D2-Romonat-3. And the court there said it merged, that the offense merged. But that doesn't mean that you can't have merger if it's distinct drugs. Because I think, and if you read, if you look at, for example, in Ramsey, and I understand Ramsey's, the distribution case, it's not a DUI case, but in Ramsey, you had distinct drugs. You had one on Schedule 1, one on Schedule 2, both narcotics. The offense is merged. So I don't think the case, and it's Givens, right, is the case that you cited, right? I don't think that says that if you have distinct drugs, they're not going to merge. It does say that if you have a substance and then a metabolite of the substance, you're going to have merger. But it doesn't follow that you don't have merger in other circumstances. I hope I answered your question. I'm sorry. Is there any Pennsylvania case that demonstrates that that is the case? I have no, I'm not aware, and I spent a few hours trying to find a case. I'm not aware of a case in Pennsylvania, publisher-imposed, that dealt with a DUI-controlled substance offense where there were two different, say, Schedule 1 drugs, or two, you know, a Schedule 1 and a Schedule 2. I couldn't find a case. Well, what about this case below? What happened with the sentence in this case? Wasn't there a conviction for marijuana, cocaine, and I think something under Romanette 3 as well? Yes. What happened with this sentence? Didn't it all merge into one sentence? Yes, it did. With the DUI? Yes, it did. With the alcohol as well? Did that all merge? They all merged. All the DUI offenses merged, yes, yes, Your Honor. So what's the legal upshot of that? Well, so I think if I could just, there was one other thing I wanted to say in response to Judge Krauts, which is I couldn't find a case, but I don't think, it's the government's burden to establish removability. I don't think it's Mr. Pesikin's burden to identify a case and say, yes, these DUI offenses are absolutely going to merge if there's two distinct drugs. I think it's really the government's burden to prove the otherwise, and if there's not definitive Pennsylvania authority saying absolutely that these offenses are or are not going to merge if you're dealing with two distinct drugs in a DUI context, I really think that it's the government's position on removability, not the petitioner's position. The question of divisibility is a question of federal law, right? Yes. I apologize. Ultimately, you have to look to state law to determine whether the statute is divisible. But, well, I'm going to be asking your friends from the government about this in a minute anyway, but it appears that their argument, at least in their answering brief, is that, let me see if I can take you to that specifically, it's their answering brief at pages 35 to 36, if I'm not mistaken. They come back at you when you talk about Commonwealth versus Beatty and say that, look, it's true that Beatty said it's not an element, but, quote, there the court was applying a state-specific definition of element that diverged from the federal definition used for divisibility purposes. Indeed, this court has already held the statute at issue in Beatty to be divisible, which is true. We have said that. So is it or is it not the case? It sounds like, you know, Mr. Lutz is going to speak for himself on this, but it sounds like what the government is saying is, well, I mean, you know, it matters what the state courts are saying, but at the end of the day, the question of whether something is an element or not is a question of state, of federal law, not of state law. So I think, right. I think what, what, right. Yes. I mean, what, what Santos, Santos is, the citation is debate. We cited Beatty and then the government cites Santos at treatment of Beatty saying, well, okay, but Beatty is just saying is you don't have to prove, you know, in that in Beatty, there was a mixture of heroin and fentanyl. The government proved that there was intent to, to, to, to distribute heroin, but not necessarily intended to distribute fentanyl. The fentanyl is what killed the victim. And then the offense was, you know, conspiracy to distribute a substance that leads to death. And so the argument was, well, you, you know, you, you didn't prove that, that I had intent to distribute the fentanyl and, and, and what the court said is, well, they don't need to do that. Okay. And so, and so then what, what Santos says is, well, all right, but if it affects penalty, if it affects penalty, it's still an element and that's right. And that's right. But, but if it, but, but, but just again with Hillox, if it doesn't affect penalty, the penalty, it's not an element. So in Ramsey, in Ramsey, their argument, because their response to that is, you know, you're, you've committed the formal logical fallacy of denying the antecedent. The fact that, that you can, uh, you can, uh, see a difference in penalties may demonstrate that there's something as an element, but if there's no difference in element, I mean, no difference in penalty, that doesn't, it doesn't follow that that means it isn't an element. Well, except what this court said in Hillox, I mean, Hillox looked at Abbott and said, you read Hillox to say, you read Hillox to mean that's not true. If the penalty is the same, it's necessarily the case that it's not an element. That's how you read Hillox. I do believe, I do read Hillox that way. Yes, I do read Hillox that way. Good enough. Maybe when you come back, you could tell us exactly where you see that in, in Hillox. Sure, sure, sure. I wanted to ask you also about just the language of the statute that we are, we're dealing with. Yeah. Um, because the offense here, you know, talks about, uh, there's in the individual's blood any amount of A singular, and then it provides for schedule one controlled substance, two or three controlled substance or metabolite, um, controlled substance, uh, we're told in the definition section refers us back to one Oh four. And the schedules seem to, uh, list out, um, that what constitutes controlled substances are, uh, the, those individual, um, items that follow, um, that is that, uh, the following controlled substances are included in this schedule for each particular schedule. How, how is it given the language of the statute, let's say we get to that point, if we conclude that the state decisional law is not clear, uh, and we're, we're looking at the, uh, the, the way the statute is written, um, given that interplay and the cross reference to we've said in the, uh, one 13 context, um, makes for elements of, of the drug, not means, um, how, how do we read this differently to cover any drug when it says, uh, or any controlled substance, when it says a controlled substance and controlled substance in one Oh four, uh, is defined, uh, the schedule says that the following are the controlled substances, they, they have, which appear to be each one discreet. Well, okay. So I want to make sure I'm responding to the question. So just incorporating the schedule, I mean, if you're saying a, a controlled substance, that's still indefinite. Um, that doesn't just referencing a controlled schedule or even, or even a substance on schedule one that doesn't make, that doesn't make for disjunctive language. Um, you know, Hillux says you've got to have very explicit, pretty explicit statutory language indicating disjunctive treatment. And in Hillux, the, the, the statute at issue incorporated, right. It was using a cell phone to commit a felony under title 18 or a felony under title 35. And what this court said in Hillux is, well, you've got an or there. And so maybe you can divide and say, all right, there's offenses under title 18 and offenses under title 35, but you don't further divide. In other words, the reference to a felony under title 18 doesn't mean literally each and every single felony under title, title 18. And then literally each and every felony under title 35. So just, just incorporating a law, a larger list doesn't make for a disjunctive or divisive divisibility. Um, and, and I think that's the case in, in, in Malouli, the Kansas statute defined controlled substances by Kansas's lists and what the Supreme Court said in Malouli, I mean, Supreme Court explicitly said, this is not a divisible statute. We're not going to, we're not going to apply the modified categorical approach. Um, so I think just, just, just, just saying a substance on schedule one, you know, and then you have to look at, I mean, obviously schedule schedules a list. So if you're referencing schedule one, you're referencing a list, but, but that language is not sufficient to say each one of these items on the list is literally a separate offense. But we, we said that was the case. We have our own, our own precedent that would control us in the 113 context, right? Well, so I think what, and if I could, I know you've asked me to do it on rebuttal. Um, I could get it right now. I could get hillocks right now. I don't, I don't think this court's precedents other than Henderson. I don't think this court's precedents literally support divisibility all the way down to each individual drug. I agree with you that Henderson did, but I think Henderson is, is in doubt because of Ramsey, which post states it. And as a state, a state court datum that wasn't considered and would have to be considered. Um, so, so, but, but are you saying that if we said, is your suggestion that if, if, if we said even for the, if we had a stat, if we had a decision from our court that said, you know, under the DUI statute, it's referencing these, uh, drug schedules and therefore these are separate offenses. And then this, the Pennsylvania Supreme Court came out and said, you know, um, given, got it right. Uh, these things merge. It doesn't under the DUI statute. If that, if that happened, uh, that our, our case law about what's the visible and not would be wrong. And we would have to go back and we, and we as a panel, not having to go in bank, we as a panel could say that's wrong, ignore it because this, because there's this language from the Pennsylvania Supreme Court about their statute. Yes. In other words, I do believe that, I do believe that when, when a panel is assessing a question of state law that, you know, whether it, whether it's in this context or in the context of an, you know, an eerie prediction about, you know, how the Pennsylvania Supreme Court will come out. I think, I think the panel is, is, is going to have to make that assessment based on the current, the current evidence of what state. Why shouldn't we consider certifying that Supreme Court? Your honor, you could, you could certify the question. In other words, if your honors believe there's enough ambiguity here, the question could be certified. I, yes. I mean, we wouldn't ask for that. I think if there's ambiguity, who does that fall on? I think it falls on the government. I mean, the government has the burden to establish removability. Okay. It's their, it's their burden. What, what do you make of the difference in language? You know, Hillox is talking about any crime which constitutes a felony under the Controlled Substances Act. And we're dealing with a statute that talks about a controlled substance. Grammatically, I don't view those as distinct. I think any and a are indefinite articles. They're both, they're both indefinite. I, I don't think that the reference to a, as opposed to any is, is intended to, to, to literally signal divisibility. You know, again, I think under Hillox, you've got to have a pretty clear statutory indication that, that, that, that, that, that the language is supposed to be divisible. If we have continued ambiguity, we look at the case law and there's, there's arguments that you have ably made on both sides. And there's ambiguity in, in the text. We then go to the record, right? And here we've got model jury instructions that are given that require Pennsylvania juries to find unanimously the particular controlled substance. Actually. What do we do with that? Sorry. So actually that's not, that's not correct. What, what the, what the suggested jury instructions actually say is the jury is asked to make a general finding about whether there's a controlled substance under Schedule 1 or Schedule 2 or Schedule 3. The, the jury is then instructed by the judge that the the jury is not making a finding about drug identity. And that makes sense because I mean, the jury doesn't know what's on the schedules. I mean, the lay jury isn't going to have any clue what is or is not a Schedule 1, Schedule 2, Schedule 3. We're not concerned particularly about that. This is not about the schedule for purposes of this question. The point is if the jury is required to make a finding unanimously as to the identity of the particular controlled substance, which as you just explained is, is the way the instruction works, right? They're, they're told that you find the particular drug and then they're instructed by the judge that that drug is a Schedule 2 substance, for example. But they have to unanimously find the identity of the, of, of that drug. Why doesn't that, if we're still in equipoise getting to that point, suggest that this is an element? So, so again, what they're, they're not finding drug identity. They're being told what the drug is. And that's because just practical, if there were two drugs at issue, they'd be told both drugs. And this court actually said that in Hillux. That the fact that the jury instructions reference a drug doesn't make the drug identity an element. I mean, that's addressed in Hillux. You know, and this court says in Hillux, if there to identify the drug doesn't mean that there's one specific drug that has to be, that has to be identified. The jury's told what the drug is because the jury doesn't know what's on the schedules. And as a practical matter, if the offense involved marijuana, they're going to be told that this is a marijuana thing. And now you have to decide whether a Schedule 1 drug is involved. I'm telling you marijuana is a Schedule 1 drug. I thought you just said the opposite. And I think that's how I was reading the instruction. The jury is instructed by the judge that that particular, that the drug that's been charged is a Schedules 1 and 2 substance. But the jury is told that they have to find unanimously that that drug was the drug in the offense. Doesn't that indicate it is an element? Just going back to what Hillux says, the fact that the judge is identifying a drug doesn't mean that there's only going to be one drug. There could be two drugs. There could be heroin and marijuana. And then the jury would be told heroin and marijuana are Schedule 1 drugs. Do you find that there's a Schedule 1 drug in the driver's bloodstream? So it's the fact that the jury is being told what the drug is, is just because of the practical reality of they're going to be told what the drug is. If there's more than one drug involved, they're going to be told both drugs. The driver's accused of having both of these drugs in his or her bloodstream. Do you find that there's a Schedule 1 drug in the bloodstream? Is there a jury instruction that requires them to be unanimous as to a finding about what's in the bloodstream? No. That language is not in the jury instruction. I just want to be completely clear. I hear you and I just want to make sure I'm not missing something. The jury does not have to determine what the drug is. The jury is told what the drug is. Is that what you're saying? Yes. The jury is told what the drug is. And if more than one, say, Schedule 1 drug was involved, if there was a heroin, which is a Schedule 1 drug, and marijuana, which is a Schedule 1 drug, if there's more than one that the driver is accused of having in his bloodstream, the jury's going to be said, in this case, the prosecution says that there was heroin and there was marijuana. I'm telling you those are Schedule 1 drugs. Do you find that the driver had a Schedule 1 drug in his blood? Under that instruction, the jury would not have to be unanimous as to which drug it was. Does that answer your question? Yes. Okay. We'll have you back, Governor Bowe. Thank you, Mr. Fogdoll. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Alexander Lutz for the government. Your Honors, I've already articulated a lot of my points, but the one I want to start with is that divisibility really is a question just of federal law. We're looking for means or elements, not in any sense, but in a specific federal sense under Mathis. Yeah. Well, that's a good place to start. And we can pick up right where Mr. Fogdoll left off on that point. Your assertion seems to be, and you point at this jury instruction that we've been discussing, that they have to be unanimous in picking out a jury in Pennsylvania would have to be unanimous in picking out a drug. And therefore, the drug is an element, if I followed your argument right. Mathis uses this language. This is Judge Kagan giving us all a hypothetical. To use a hypothetical adapted from two of our previous decisions, suppose a statute requires use of a deadly weapon as an element of a crime and further provides the use of a knife, gun, bat, or similar weapon would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime. Spells out various factual ways of committing some component of offense. A jury need not find a defendant use any particular item. A jury could convict if some jurors concluded that the defendant used a knife and others concluded a gun. Why isn't this jury instruction you're pointing to exactly like that? Particularly in light of how Mr. Fogdall has asserted it operates. You have a potential for two drugs in a DUI person's bloodstream. The court says the prosecution contends there's heroin and marijuana in the bloodstream. Now I'm instructing you those are both schedule one drugs and therefore, if you find there's a schedule one drug guilty and there's no requirement stated that they be unanimous. Why isn't that just exactly as Mr. Fogdall is asserting and as Mathis indicates merely a means and not an element? A few reasons your honor. First of all that illustration from Mathis involves an indefinite list and that statute doesn't matter what the deadly weapon was. It could be any deadly weapon and those were just some examples. So are you suggesting that if there was a statute that said assault with a deadly weapon including a knife, a gun, a bat, poison, blah blah blah, that then it would turn it into that would turn that into elements? I sort of just to tweak that I think this will answer your question. If we had a statute that said assault with a deadly weapon is a felony. Deadly weapon is given the definition provided here by this statute and that statute points us to a list of all the deadly weapons. If you use anything on this list it's a deadly weapon. If something's not on that list it's not a deadly weapon. I think that would make it an element and that's how the controlled substance schedules work here. They're not an indefinite list. You can't be convicted with respect to a schedule one controlled substance that isn't on schedule one. Sounds like an obvious point but that's essentially what we're debating here in part. Schedule one is an exhaustive list of all the different ways you can violate schedule one DUI or schedule one drug distribution or schedule one drug possession. It's not just an open-ended example as the petitioners argue. But to go back to the other half of your question about the jury instruction, the thing about this jury instruction is that it comes in at the end of the case where the prosecution has already stated what the substance is, right, and that is the theory of the case that they're locked into at that point. So, you know, we've got this case, I think the third, no actually it's a third circuit case, your honor, in Tucker. It says that the trial, where a controlled substance is an element in the bill of information limits the proof to cocaine, the trial judge was actually required to find the defendant was guilty of possession with intent to distribute cocaine. So are you suggesting that the charging instrument can make something which is not an element under state law into an element? I think the charging instruction is one thing that we look at here, your honor, and I really do want... The question is can it really be the case that you have a statute that's framed in a fashion that would not be amenable to interpretation as laying out elements, would be converted into such a statute merely by the charging choice of the prosecutor. You could turn a means into an element because of the way the prosecutor chose to to indict or to frame an information. I don't think that's what I'm saying, your honor. I'm not saying that's true in every circumstance with every statute, but what I am saying is that when doing the divisibility approach, when we're looking at divisibility under the categorical approach, we're taking very specific federal definitions of elements and means and then sifting through state law that isn't usually concerned with federal questions of divisibility to try to find some clues about whether particular things in the statute are things a prosecutor charges and a fact finder agrees about or whether they're just irrelevant alternative methods of if it's the case, if it's in fact the case, that the statute allows, DUI statute allows, and the jury instruction allows for a jury to be unanimous, non-unanimous, non-unanimous as to what drug is in a defendant's system for DUI purposes. That that is then consequently driving to the conclusion that the kind of drug is clearly a means and not an element because the jury doesn't have to be unanimous. I think the jury does have to be unanimous, your honor. I'm just saying that this... Take my hypothetical for what it is. Okay. My hypothetical is this. Maybe it's just a tautology at this point. They're asserting that the way this jury instruction operates, there need not be unanimity. If they were right about that, you'd have to agree it's a means and not an element, correct? I would not agree with that, but I would take your honor's point that that jury instruction would certainly be something for the court to consider. Jury instruction alone isn't dispositive. We've got to look at other things. Okay. So what we really should be looking at is the statute. We should look at the totality. We should look at every clue we can get to figure out how Pennsylvania treats this statute. I want to go back to one of those clues that you were talking about earlier, which is the element. So if you look at our Henderson case, we say for the first and easy method outlined by the Supreme Court, United States Supreme Court, we look to see if a Pennsylvania state court decision definitively answers the case. And then we quote Mathis, when a ruling of that kind exists, a sentencing judge need only follow what it says. Can you help me understand what I'm supposed to do with that instruction from Mathis and your statement that how the state court treats elements is different, should be considered differently less, I'm not sure, than how we treat elements? It's because the definition of element can be different. So I think the answer to your honor's question is we can start out by for cases where a state court says this is an element, this isn't an element. But then we got to drill down a level further and ask how are they using the word element? Because for divisibility, this question of federal law, it only matters if what they mean when they say element in that state court opinion is the same thing as in Mathis, which means something that has to be charged in the indictment and found by the trier fact. So Pennsylvania has got this whole different statutory definition of element. It's at 42 Pennsylvania Consolidated Statute, section 90. Now I'm about to cite the merger statute. The definition of element is at 18 section 103. And it includes a lot of stuff that wouldn't make any difference for divisibility. And, you know, I won't read the whole statute, but just for example, a fact that establishes jurisdiction or venue in state court is an element under Pennsylvania law. But that doesn't tell us anything about whether something has to be charged in the indictment and then found by the trier fact and so that doesn't have anything to do with whether it's an element for federal divisibility purposes. That's all we're looking at under Mathis. Okay. The other thing I want to hear you talk about, because I didn't see this in your briefing, is Hillocks. Your friends on the other side say Hillocks tells us the answer to this case. And he talks about Hillocks during the oral argument here extensively. What is your reaction to Hillocks? Why is Hillocks not instructive here? I'm surprised to see Hillocks come up to the extent that it has, Your Honor. Obviously, I've read that case, but I don't have it in front of me right now. I don't remember that case saying much about the divisibility of Pennsylvania controlled substance schedules. And I think the point for which opposing counsel just cited it was that it talks about the Second Circuit's opinion in Harbin. Well, that was looking at New York controlled substance schedules. And again, divisibility is a federal question that works the same everywhere. But then you start looking at state law to figure out whether something's an element for Mathis purposes or a means for Mathis purposes. And that answer is going to be different in every state, sometimes between different statutes in the same state. So to the extent that we've got Hillocks talking about Harbin, which is talking about New York law, that's just not relevant to how Pennsylvania controlled substance schedules work. What I'd point out here is a couple of points that Judge Krause brought up during opposing counsel's presentation about Swavely and this court's opinion citing Swavely. I think that is the closest we're going to get to the kind of opinion that with that regard to, you know, it doesn't just say elements, it doesn't just say means. It goes that further step and starts talking about whether something is a fact that has to be charged in the indictment and returned by the trier of fact. That's what makes something an element for Mathis. And Swavely doesn't just stop at using the word element in some differentiated sense. It goes further. And Swavely said the Pennsylvania Superior Court said to convict on delivery of 2-anol, Schedule 2 substance, quote, the jury had to conclude there was a transfer of 2-anol. To convict on delivery of a Schedule 4 substance called Talwin, quote, the jury had to conclude there was a transfer of Talwin. That's dealing with a different statute. That's right. And we have, you know, more recently, these two cases, Givens and then just a couple weeks ago, Commonwealth v. Westlake. And Givens, both of these are dealing with 3802D1. And Givens says, seems to just identify the offense as prescribing a single harm to the Commonwealth. The DUI-controlled substance subsections providing alternative means by which the Commonwealth can establish the offense but do not provide proof of different offenses. The focus seems to be on the single act of driving rather than the particular drug that is being delivered. So we're in the realm of a different statute and where we have Superior Court cases saying that in this statute, where you've got at a minimum where you have a Schedule 1, 2, or 3 substance and a metabolite, that those are means. Subsection 3 at that point becomes a and Westlake, which I'm sorry we didn't get a chance to give you notice of, having just found it late yesterday. But this, just from the Superior Court just a couple weeks ago, says the record reflects Appellant committed a single act of driving while his blood contained both cocaine. This court has held that a defendant should not be subjected to separate sentences for multiple convictions arising under 3802D1, citing to Givens. Don't those two tell us that the Pennsylvania courts are viewing the particular controlled substances here as means? They merge. Respectfully no, Your Honor. First of all, given I know well Westlake, I think I read a couple of days ago, both of those cases are talking about merger between a parent substance and its own metabolites. That's a really different fact pattern from what's at issue in this case. Why is that so different? What's so different about the parent drug and a metabolite? They're treated in two separate sections, Romanette I and Romanette III under the statute, and yet the court says doesn't matter. You're driving under the influence. It looks like the courts are saying, we don't care what you're high on. We don't care what you're drunk with. The point is that you are intoxicated and shouldn't be behind the wheel. Done. It's different, Your Honor, because a parent substance and a metabolite are both going to appear in a person's bloodstream. A metabolite is a chemical your body makes when it breaks down the parent substance. I'm sure you know that already, Your Honor, but I'm making that point just to illustrate that if I prove that you have a metabolite of cocaine in your bloodstream, that is entirely sufficient to prove that you consume cocaine. That may be the facts of the case, but the reasoning does not seem that limited. A defendant should not be subject to more than one sentence for a single criminal act that results in multiple convictions in the same subsection of the DUI statute, not Romanette I and Romanette I and Romanette III. Why would we read this to be as limited as what you're saying? Because, number one, the Pennsylvania courts have gone the other way in other situations. If I look at Hines, which is a case involving D1, Romanette I, Schedule I controlled substance, and D2, those didn't merge. What about here? Didn't it merge here? Excuse me? Didn't all of the convictions merge here in this case? They did, Your Honor, but the question here is very narrowly whether different Schedule I controlled substances create different crimes under 3802 D1, Romanette I. Everyone, both parties in the agency agree that that subsection is the only one at issue here, so all we're looking at is... I understand that, but if I've got Romanette I, Romanette II, and Romanette III at issue here and they all merge, why doesn't that cut the way of what you're arguing? Well, the other point I would make, Your Honor, is that a lot of these cases are using a standard of merger that's looking at something, again, different from Mathis elements and means. You know, again, a state can call anything at once an element or a means. It can make its merger standard work whatever way it wants, but what we've got to look for is what is an element as Mathis defined it. Yeah, and we have to look at... You've said we have to look at all the things the state's doing to figure that out, so here's what the state's doing. Right, and what the state's doing in a lot of these cases is it's applying a non-elements-based merger standard. Well, let me ask you this. If the most you can say is there's some cases going this way and there's some cases going that way, there's some evidence this way, there's some evidence that way, if there's ambiguity and the burden is on you, the government, to prove removability, doesn't that mean you haven't proved removability? Burden proves on you, you lose. Respectfully, no, Your Honor, and I'd point the court to the Supreme Court's recent opinion in Pareto about how this burden of proof works. The burden of proof applies to factual aspects of removability. The government proved what Mr. Pesikin was convicted of in state court. The government produced documents showing this conviction existed and the statutes that govern it. That's the burden of removability there. So then the question becomes... So what you're saying is if the best you can mount is some ambiguous state law, some argument that it's hard to understand what the state is doing, that you win anyway. That's your argument. My argument is that we have the better read of the law if it's truly ambiguous. Well, yeah, there you go. You're getting to it. If it's truly ambiguous, what? If it's truly ambiguous, the court's got to make the call, Your Honor, and I hate giving you that answer, but that's the ultimate answer. Divisibility is a question of federal law. If that question of divisibility turns on whether the state itself is treating for purposes of 3802 the scheduled drugs in 104 as elements or means, should we consider certifying that to the state Supreme Court? Your Honor, I hate to say it, but that question puts me in my least favorite position of being forced to give what I think will be a disappointing answer. You certainly can certify. That option is available. I cannot take a position on whether the court should or should not choose to do that. What I can say is it's an option, but I don't think it's necessary in this particular case because we really do have multiple indicia. It's totally fine and valuable that we're homing in here on things one at a time, the jury instructions, these specific cases, but when I'm looking at the totality here, what I see is a statute that brings in a definite list of Schedule I controlled substances that this court has repeatedly said, even recently in criminal cases that post-date the state opinions. I've heard the context of a DUI, though, right? No, Your Honor, and I understand the difficulty that that poses. I mean, when you think about a DUI just in a commonsensical way, it does seem like the focus is more on the driving than the time being limited. I just want to focus on, I was assuming in asking you the question, that the language that we're seeing in Given and Westlake about a single criminal act was the driving. Do I understand you to be arguing that the single criminal act that these courts are saying can't subject someone to more than one sentence is the ingestion of a single drug, because it's that drug that is one violation but necessarily creates the metabolite and is the other, so that that's kind of sui generis and otherwise different drugs would remain different elements? I'm not sure what they're saying is, I think in those specific cases they were saying the ingestion of a drug that then makes you test positive for the drug and the same drug's metabolites. Yep, that was one act that should produce one punishment, and I would note, I think this is an important point, that line of cases harks back to previous Pennsylvania cases on alcohol DUI, where there's the default intoxication provision that says you've committed a DUI if you've driven with any amount of alcohol that impairs you, and then there's other provisions that say you've committed a DUI if you drive with alcohol in your blood in a specific concentration, and the court said, well, if you drove with the specific high concentration, you necessarily also drove with some alcohol in your blood, so that same conduct could hit you under two statutes. We're not going to have you double punished for that. Very similarly, if a substance produces these metabolites in your body, right, that's two different provisions, kind of like general purpose DUI and specific quantity DUI, that are both inherently always going to be true together. If you have the metabolites in your blood, you always have ingested the substance. If you ingest the substance, you'll always have the metabolites. You couldn't just have ingested a metabolite? Well, you know, I mean, people are creative, Your Honor, but I don't know where you're going to get the benzo, glyco, whatever. Either, but as a pure logical matter, I don't think it follows. Well, I'm just telling you how the courts have looked at it, and that's how they've looked at it in a specific metabolite context. Can I ask one last question? Yeah, of course. Which is, say we disagree with you, and we conclude here that for the DUI statute, controlled substance is simply a means. What are the, if any, are the broader consequences of that in terms of other provisions of other controlled substances laws, you know, in Pennsylvania, or in how we assess them within federal case law? I think it depends on the court's reasoning and arriving at that holding. I mean, in the most narrow sense, if the court were just to hold DUI with a Schedule I substance under 3802 D-1-1 is indivisible by controlled substance, I think that would mean, because Pennsylvania schedules are overbroad, that no DUI under a Schedule I controlled substance could trigger this ground of removability as a federal controlled substance offense. I think if your honors were to go further and say that schedules as a whole are indivisible, and I have to say, I think the panel is bound by Singh and Abbott and other cases on that point, but if the court were to say Pennsylvania's Schedule I just illustratively lists means and does not create elements that make a statute divisible, I mean, that would have pretty broad repercussions for all Pennsylvania controlled substances statutes. It would really limit their impact for sentencing purposes and federal immigration purposes in ways that I think Congress did not intend. Okay. Thank you very much, Mr. Lutz. Thank you, your honors. I will try to be as quick as I can because I know that the panel had a long first argument and I will make every effort to get this done in three minutes. If I could start with Hillux, because Judge Krause, you did ask for some citations to that opinion. So Hillux, just so you have the site, I'm sure you have it, it's 934F332. That dealt with using a cell phone to facilitate the sale of heroin, which obviously is a federal controlled narcotic. If the statute divided by drug, literally individual drug, this case could not come out the way it did. In this case, the court said that the drug offense was not a categorical match to 1227A2B Roman at one. In the specific pages I want to point your honors to, the statute at issue is quoted on pages 336 to 37 and what it criminalizes is using a cell and it does use that same indefinite article that the DUI statute uses, a felony under Title 18 or under the Controlled Substance Act, Pennsylvania's Act. So it's got that same language of just referencing generally a list of felonies and the government's argument was referencing that list of felonies literally divides it all the way down to the individual felonies. You're skipping over its reference to any crime, any crime which constitutes a felony under the Controlled Substances Act, right? A person commits a felony of the third degree if that person uses a communication facility to commit any crime which constitutes a felony. Yes, so I'm, yes, because I think what's referencing the list is the indefinite article of felony. But the point is that this court held you don't divide literally by individual drugs. If you did, this person would have had to have been removed. Where is that particular provision that you said bound us to the proposition that if it doesn't correlate with different levels of penalty, it cannot be an element? So I want to get to that. There's one before that though, there is language in in hillocks that addresses jury instructions and that's on pages 342 to 43 where the jury instruction at issue required the judge to identify the crime that was committed with the cell phone and the government said oh well because the jury instruction requires that the crime be identified therefore the crime's an element and this court rejected that and in the course of rejecting that the court cites Harvin v. Sessions and then again in connection with the question you're asking your honor but I just if I could I just want to point out this point about the jury instructions because I think it's relevant so this court cites Harvin v. Sessions and says in that case model jury instructions included an element that read on or about date in the county of county the defendant defendant's name sold specify meaning specify the drug and the second circuit concluded that although the instructions include a blank with the word specify in it allowing the judge to name the substances at issue in the case the instructions do not say it is impermissible to identify more than one substance. I'm very familiar with with that language in hillocks and and the differences between the New York law and and Pennsylvania law but I I want you to point me please to where it talks about the absence of penalties precluding a finding that it's an element. So then on page 344 the government's position also does not comport with other markers that indicate when a crime has multiple elements such as whether different divisible categories result in different punishments. The court then cites Abbott. We said this type of drug insofar as it increases the possible range of penalties is an element of the crime citing Abbott and in the next paragraph here by contrast the penalty under the cell phone statute does not change depending on the underlying felony and that's true in the case of DUI. There's no difference in penalty to whether what as to which section you violate in circumstances where the penalties do not vary other circuits have found that the statute is not divisible in Harbin a case which like Abbott concerned a list of controlled substances the second circuit found that because the statute carries the same penalties for each violation each controlled substance is a mere means of violating the statute not a separate alternative element. So now does that bind you to say that if there's no difference in penalty it's not no but it's very persuasive. I mean this court is citing that case very favorably in the course of rejecting an argument that a statute divides by drug identity. That's very persuasive authority that this statute doesn't divide by drug identity. I'm out of time. And you're good. Okay so if I I'm sorry I will try to be quick just in is there something I gave you like 30 seconds to wrap up Mr. Fogel. You want me to okay no I'm on I'm okay. Well we thank you for your representation of Mr. Peskin in this matter. We appreciate it very much. We thank Mr. Lutz for his argument here as well. We've got the matter under advisement.